UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

S.M.H.,

                Plaintiff,

    v.                                          **DECISION AND ORDER**
                                                      23-CV-725-A

MARTIN J. O'MALLEY,[1]
Commissioner of Social Security,

                Defendant.

───────────────────────────────

I.      **INTRODUCTION**

Plaintiff S.M.H. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff Supplemental Security Income (SSI) under the Social Security Act. Plaintiff (Dkt. # 4) and the Commissioner (Dkt. # 5) have filed cross-motions for judgment on the pleadings. Plaintiff's sole contention is that the Administrative Law Judge ("ALJ") decision is not supported by substantial evidence because the ALJ erred in assessing an opinion from Plaintiff's treating nurse practitioner. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

---

[1] Martin O'Malley is now the Commissioner of Social Security. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

### A. Procedural History

On February 18, 2020, Plaintiff S.M.H. filed applications requesting Social Security Disability (Title II) and Supplemental Security Income (Title XVI) alleging that he was disabled beginning November 1, 2019, based upon his claim that he was bipolar, manic depressive, and schizophrenic. (T. 10, 56, 284).[2] Plaintiff's applications were denied initially on December 14, 2020, and upon reconsideration on December 14, 2020. (T. 10). Thereafter, Plaintiff, on January 4, 2021, timely filed a hearing request. (T. 10). Plaintiff, who was represented by counsel, appeared and testified at a phone hearing before ALJ Deborah Van Vleck, on August 20, 2021. (T. 10, 30). On August 30, 2021, the ALJ issued an unfavorable decision which determined that Plaintiff was not disabled. (T. 7).  On May 24, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (T. 1), and this action followed.

### B. Factual Background

Plaintiff was born in February of 1986 (T. 32) and completed ninth grade. (T. 39).  Plaintiff did not complete school due to behavioral issues. (T. 39).  Having subsequently obtained a GED, Plaintiff previously worked in a cell phone store, a laborer, a crossing guard, and a cashier. (T. 38-39, 44, 281).

---

[2] References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case, set forth as Dkt. #3 on the docket in Case 23-CV-725.

**1. Treatment History:**

On February 14, 2020, Plaintiff was evaluated at Pittman Psychiatry and Recovery, and during the visit, he reported that he was experiencing impulsivity, impatience, and constant paranoia. (T. 407). His sister reported that he was "unstable" and that he would get upset and "would end up in California." (T. 407). Plaintiff advised that his symptoms began in 6th Grade when he began smoking marijuana. (T. 407). He reported that he was working part-time at his family's smoke shop. (T. 408). Upon examination, Plaintiff's behavior was found to be cooperative, engaged, and well-related. (T. 408). While his mood was described as "mad," his affect was congruent, appropriate, and his thought process was described as "goal-directed." *Id*. Despite having a thought content that was described as bizarre, his memory and cognition were intact and his concentration was good. *Id*. His impulse control was poor, while his insight was fair. *Id*. He was diagnosed with bipolar disorder and cannabis use disorder, and Olanzapine was prescribed. (T. 408). During a February 21, 2020, follow-up, Plaintiff's mood was described as "better" and his thought content as "non-bizzare." (T. 410). He remained on Olanzapine and was started on Lithium. (T. 411).

Thereafter, Plaintiff sought mental health treatment at Spectrum. (T. 450). He reported feeling ashamed of his symptoms. (T. 450). Having previously stopped attending treatment due to being "very embarred to need help" (T. 441), Plaintiff sought to resume treatment as his "behavior was all over the place" including

3

increased traveling, spending money, lying, racing thoughts, not sleeping, and fatigue. (T. 441). Plaintiff noted improvement from his medications (T. 441) and stated that he had previously used marijuana to help his symptoms. (T. 442). He also indicated that he used synthetic marijuana which worsened his symptoms. (T. 442). He further reported anger issues. (T. 442). On examination, his insight was determined to be partial and his judgment fair. (T. 443). He recognized that he needed to be on medications. (T. 443). Eventually, his Lithium and olanzapine were discontinued due to weight gain. (T. 431). He was started on Trileptal (T. 431) and later reported that his condition had improved since he had started on Vraylar. (T. 569). He still endorsed depression and anxiety despite improvement. (T. 570). Plaintiff's insight remained partial with fair judgment, and as a result, his Vraylar was increased. (T. 571).

By May of 2021, Plaintiff, while continuing to complain of depression and anxiety (T. 566-67), reported that "some days [wer]e better than others," (T. 559), but that his fluctuation in depression was "not bad." (T. 559). On June 28, 2021, Plaintiff had a primary care visit at Inspired Health Group and reported to be suffering from low back pain and bipolar disorder. (Tr 593). He was obese on examination. (T. 595).

### C. Consultive and Opinion Evidence

State agency consultant, A. Chapman, Psy.D., reviewed Plaintiff's file and opined that Plaintiff could meet the basic mental demands of competitive, remunerative, unskilled work including the ability to understand, carry out, and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine setting. (T. 94).

State agency consultant H. Tzetzo, M.D. concluded that the claimant did not have a severe mental impairment. (T. 71).

Independent consultative examiner Dennis Noia, Ph.D., opined that Plaintiff had moderate limitations regulating emotions, controlling behavior, and maintaining well-being but otherwise identified no more than mild limitations. (T. 418).

Nurse practitioner Sheryl Campbell-Julien, who treated Plaintiff, opined that Plaintiff had a satisfactory ability to understand, remember, and carry out very short and simple instructions and detailed instructions, maintain attention for two-hour segments, make simple work-related decisions, complete a normal workday and workweek, get along with coworkers or peers, respond appropriately to changes in a routine work setting, maintain awareness hazards and take appropriate precautions, travel in unfamiliar places and use public transportation. (T. 614). She did not identify any limitations in the ability to maintain regular attendance and punctuality, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, set realistic goals or make plans

5

independently of others, interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (T. 614). NP Campbell-Julien did opine that Plaintiff had serious limitations in the ability to sustain an ordinary routine, working coordination or close proximity to others, perform at a consistent pace, deal with normal work stress. She concluded that the claimant could not engage in full-time competitive employment on a sustained basis. (T. 614-615).

### 2. Hearing Testimony:

At the hearing, Plaintiff testified that his primary concern with leaving home is mental rather than physical. (T. 43).  He indicated that he does not like to leave home because he is worried that he will become involved with other females, that he might be exposed to drugs, and that he can be a better father by being home. (T. 44). Plaintiff testified that while he could work full-time at a cell phone store, "lasting [on the job] is the problem." (T. 45). makes you a better father.  He indicated that although "sometimes" he feels depressed, he denied any significant physical restrictions. (T. 51-52).  When asked what the main problem was that prevented him from holding a job, Plaintiff responded, "Myself, and my mind always running, and always thinking negatively. That's the main reason." (T. 60).

At the hearing, a vocational expert answered questions posited to him by the ALJ and Plaintiff's counsel. (T. 60-63).

### 3. The ALJ's Decision:

Using the five-step sequential analysis, the ALJ found the Plaintiff had not engaged in substantial gainful activity since November 1, 2019, and had the following severe impairments: "[a] mental impairment variously assessed as bipolar disorder, cannabis dependence, uncomplicated, adjustment disorder with depressed mood." (T. 13). At step three, the ALJ found that Plaintiff's impairments did not, individually or in combination, meet or medically equal a listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 14). Upon extensive consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, except that he could perform simple, routine, and repetitive tasks; could use judgment and deal with changes in a work setting that are consistent with the demands of simple, routine, and repetitive tasks; could sustain the demands of this type of work for eight-hours a day and 40 hours a week with the routine breaks provided during the day and at lunch; and would do better working with things rather than with people and therefore should have no more than occasional interaction with supervisors, coworkers, and the public. (T. 16-21). At step four, the ALJ determined that Plaintiff could perform his past relevant work as a hand packager as he actually performed it or as it is generally performed in the national economy. (T. 21). Alternatively, the ALJ also determined that there was other work existing in significant numbers in the national economy that Plaintiff could perform. (T. 22-23). Consequently, the ALJ found that Plaintiff was not disabled and denied his claims. (T. 23).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the

claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (internal quotations omitted).

### B. Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080,

147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III. ANALYSIS

**The ALJ Did Not Err in Failing Properly to Evaluate the Opinion of Plaintiff's Psychiatric Nurse Practitioner**

Plaintiff's sole contention is that the ALJ erred in evaluating the opinion from Plaintiff's psychiatric nurse practitioner. (Dkt. #4-1, p. 8). According to Plaintiff, the ALJ failed properly to explain supportability and consistency, and to the extent that she did, her assessment relied on selectively chosen evidence. *Id*. Consequently, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence. *Id*. This Court disagrees.

The Court finds that the ALJ applied the appropriate regulations for evaluating medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. Those regulations require the ALJ to explain in the decision how the supportability and consistency of a medical opinion were considered, as those are the most important factors in determining the persuasiveness of an opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Here, the ALJ did just that and considered—and found largely persuasive—the assessment of state agency psychological consultant Dr. Chapman, who reviewed the available record and issued a functional assessment on December 11, 2020. (T. 19-20; 93-94). As the

10

ALJ noted, Dr. Chapman concluded that Plaintiff retained the capacity to meet the basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (T. 19, T. 94). The ALJ found that Dr. Chapman's assessment was supported by her analysis of the evidence and citations to records that showed some issues with mood, racing thoughts, paranoia, and impulse control, but also showed grossly intact mental status upon examination. (T. 19, 93-94). "The more relevant the objective medical evidence and supporting explanations resented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1).

Furthermore, the ALJ found that Dr. Chapman's assessment was largely consistent with the longitudinal record, which showed ongoing complaints with mood and sleep but also described overall improvement with treatment and largely normal mentals status findings, including appropriate appearance, demeanor, and behavior and intact memory, attention, cognition, perception, judgment, and insight. (T. 19, 405, 408, 410, 418, 431, 439, 441, 443, 560-61, 564-65, 567, 570-81, 595).  Once again, under the regulations, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or

11

prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the regulations, the findings of non-examining sources, such as state agency consultants, are permitted to constitute substantial evidence in support of the ALJ's decision. *See Tibbles v. Comm'r of Soc. Sec*, No. 22-1127, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023); *McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022).

That said, the ALJ did find certain portions of Dr. Chapman's assessment, including the absence of specific social limitations, to be not fully consistent with the overall record. Specifically, the ALJ did find that some such limitations were warranted based upon Plaintiff's reported concerns regarding making good decisions and avoiding substance use when socializing with others as well as Dr. Noia's findings concerning Plaintiff's need for certain adaptation-related limitations involving behavior and emotions. (T. 19-20; 43-44, 418). Based upon these limitations, the ALJ reasonably found that, "[g]iven these issues with managing oneself in social situations," Plaintiff was more limited than Dr. Chapman assessed, and the ALJ reasonably limited Plaintiff to only occasional interaction with supervisors, coworkers, and the public. (T. 16, 20). Indeed, the Second Circuit has affirmed RFC determinations where, as here, the ALJ relying upon evidence in the record in some instances deviates from opinions and includes greater limitations in the plaintiff's RFC. *See, e.g., Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020).

The ALJ also considered—and found partially persuasive—the examination findings and opinion of Dr. Noia, who performed a psychiatric consultative examination on Plaintiff and noted that despite claiming to be depressed and manic, Plaintiff described normal sleep and appetite, denied suicidal ideation, intent, or plan, and denied drug or alcohol use. (T. 18, 416-417). Upon examination, as the ALJ noted, Dr. Noia also found Plaintiff to exhibit grossly intact mental functioning, including a cooperative demeanor; adequate manner of relating and social skills; appropriate appearance, grooming, psychomotor activity, and eye contact; fluent speech; and adequate expressive and receptive language. (T. 18, 417). Plaintiff exhibited an appropriate mood, logical thinking, clear perception, average intellectual functioning, fair judgment and insight, intact attention and concentration, and intact memory. (T. 18, 417-418). In Dr. Noia's opinion, Plaintiff had moderate limitations in regulating emotions, controlling behavior, and maintaining well-being, as well as mild limitations in using reasoning and judgment to make work-related decisions; interacting adequately with supervisors, coworkers, and the public; and sustaining an ordinary routine and regular attendance at work. (T. 20, 418).

Relying upon some of the limitations she observed in Plaintiff's longitudinal record, the ALJ determined that while Plaintiff exhibited largely normal mental status findings (T. 20, 416-19; *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), Plaintiff, with a history of impulse control and substance abuse problems, did have some limitation in adapting and managing his behavior. Moreover, while Dr. Noia reported that Plaintiff showed no significant difficulties with attention during the

13

examination, such showing was not fully consistent with the longitudinal record, which showed complaints relating to insomnia and racing thoughts and evidence of pressured speech. (T. 20).  As a result, the ALJ determined that Plaintiff was more limited than Dr. Noia assessed, and the ALJ reasonably incorporated additional limitations into her RFC finding, including a limitation to simple, routine, and repetitive tasks. (T. 20).  "A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record." *Grega v. Saul*, 816 F. App'x 580, 582-83 (2d Cir. 2020).

While the ALJ noted that NP Campbell-Julien had found that Plaintiff had serious limitations in the ability to sustain an ordinary routine, working coordination or close proximity to others, perform at a consistent pace, deal with normal work stress, and that such limitations precluded Plaintiff from sustaining full-time competitive employment, the ALJ also noted that such limitations were not well-supported by an accompanying explanation identifying the basis for the restrictions other than citing to Plaintiff's own reported symptoms and work history. (T. 20-21). Consequently, the ALJ found that although the opinion defined terms such as "seriously limited" and "unable to meet competitive standards," the opinion did not provide vocationally relevant limitations. *Id.*

Although Plaintiff criticizes the ALJ and her observation that the nurse practitioner failed to provide vocationally relevant limitations to support her conclusions regarding Plaintiff's limitations, see, Dkt. #4-1, pp. 10-11,  such criticism is unfounded as the he ALJ expressly evaluated Plaintiff's functioning under the

14

appropriate framework by discussing Plaintiff's longitudinal treatment, symptoms, and activities; weighing the medical opinions about Plaintiff's functional limitations; and making an RFC determination that was consistent with the record as a whole. Indeed, the ALJ provided specific reasons for her finding that certain portions of the treating nurse practitioner's opinions were not credible. Those reasons included the opinions of other medical professionals, Plaintiff's own characterization of his abilities and limitations, as well as Plaintiff's treatment history. Along the way, the ALJ fashioned an RFC which fully addressed those limitations to which she found Plaintiff to be subject. It is well-settled that an ALJ may choose between properly submitted medical opinions. *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) (citation omitted); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). It is for the ALJ, and not this Court, to weigh these conflicting opinions in the record. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The ALJ is entitled to weight all the evidence to make the RFC consistent with the record, *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and resolve any conflicts in the record, *see Richardson v. Perales*, 402 U.S. 389, 399 (1971). This Court defers to the ALJ's findings and will not reweigh the opinion evidence. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016). Accordingly, this Court will decline Plaintiff's invitation to do just that, and this Court determines that the ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. # 4) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. # 5) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  January 16, 2025
        Buffalo, New York